## FREEMAN *vs.* CLUTE and others.

In cases of a simple sale of personal property with warranty, where there is no provision in the contract for a return of the article, the title to the property becomes vested in the purchaser on its delivery, and if the property purchased proves defective in quality he can only recover of the vendor the difference in value between the property as it was in fact, and as it was represented to be.

But in the case of an executory contract, if the contract contains no stipulation on the subject, the article sold may be returned, within a reasonable time after it has been found not to satisfy the contract.

It is a general rule that the party complaining of a breach of an executory contract is entitled to indemnity for the loss which the non-performance of the obligation by the other party has occasioned him, and for the gain of which it has deprived him.

But the gain contemplated by this rule is only that which is the direct and immediate fruit of the contract. The estimated profits upon the manufacture of a specified quantity of flax seed into linseed oil do not constitute a legitimate item of damages in an action for the breach of a contract to make and deliver to the plaintiff certain machinery within a specified time.

In an action for the breach of an executory contract the plaintiff is entitled to recover any expenses he has actually incurred in his business *as a consequence* of the failure of the defendant to perform his contract.

THIS cause was tried at the Schenectady circuit, in October, 1847, before Justice Hand ; and after taking the evidence it was agreed by the counsel that it should be decided by Justice Harris upon a case containing the evidence, and it was submitted to him for his decision, accordingly.

*Platt Potter*, for the plaintiff.

*J. C. Wright*, for the defendants.

HARRIS, J.   I think the evidence in this case sufficiently establishes the following facts : 1. That early in the summer of 1846, the defendants, being engaged in the business of manufacturing steam engines, &c. agreed, for a stipulated price, to make and put up for the plaintiff an engine of ten horse pow-

er, with a suitable boiler; and that it was to be ready for use by the first of September of that year. 2. That there was a delay of *three months* beyond the time stipulated, in putting up the engine and boiler. 3. That when the engine and boiler were put up they proved to be so defective as not to accomplish the end for which they were designed by the parties, and that three months further time was occupied in efforts on the part of the defendants so to remedy the defects as to make the machinery useful; and that these efforts proved unsuccessful. 4. That in June, 1847, the plaintiff requested the defendants to take back the engine and boiler, for the reason that they would not answer the purpose for which they were intended. 5. That $600 was paid by the plaintiff to the defendants on account of the machinery. Upon these facts it is obvious that there has been a breach of contract on the part of the defendants: and the only question is, what is to be the measure of damages upon such breach? And upon this question, the first point which it is necessary to determine is whether the plaintiff had a right to rescind the contract so as to revest the title to the machinery in the defendants.

On the part of the defendants, it is contended that this is a case of simple warranty, and that there being no provision in the contract for a return of the articles, the title to the machinery became vested in the plaintiff when it was delivered, and that the plaintiff could only recover for the difference in value between the engine and boiler as they were in fact, and as they ought to have been. This is undoubtedly the true rule in cases of a simple sale with warranty. But I understand the rule to be otherwise in the case of an executory contract. There, if there be no stipulation in the contract on the subject, the articles may be returned within a reasonable time after they have been found not to satisfy the contract. This being the rule, I think the plaintiff had a right to call upon the defendants when he did, to take back the engine and boiler, as having, after full trial by the defendants as well as the plaintiff, proved wholly insufficient to satisfy the contract; nothing having been done by the plaintiff in the meantime inconsistent with the exercise

Freeman *v.* Clute.

of this right. I think it would be unreasonable, under the circumstances as they appear in evidence in this case, to hold that the plaintiff is bound to keep the engine and boiler, when they appear to be wholly valueless to him, at least for the purpose for which they were intended. The first item of damages then should be the amount paid by the plaintiff on account of the machinery, with the interest thereon. It does not distinctly appear when the payment was made, but I think it may safely be assumed that it was as early as the first of March, when the defendants seem to have abandoned all further efforts to improve the machinery.

Again; the defendants insist that if liable for consequential damages at all, they are only liable for such expenses as were actually incurred by the plaintiff in attempting to put the machinery in operation, and such actual loss as he had sustained in using the defective machinery; while on the other hand the plaintiff claims that he is entitled to recover as consequential damages the profits he could have made in the manufacture of oil, had the machinery been complete and put up within the time limited by the contract. The important question upon this branch of the case, is whether the gains which the plaintiff might have realized if the defendants had fully performed their contract, may properly be regarded as a part of the damage occasioned by the breach of the contract.

I agree with the counsel for the plaintiff in the general rule for which he contends, that the party complaining of a breach of an executory contract is entitled to indemnity for the loss which the non-performance of the obligation by the other party has occasioned him, and for the gain of which it has deprived him. But the gain contemplated by this rule is only that which is the direct and immediate fruit of the contract. Such gain may as properly be regarded, in estimating the damages resulting from a failure to perform a contract, as any actual loss the party may sustain. But even the civil law rule, which is more liberal than the common law in the measure of damages for the violation of an executory contract, confines the allowance for the loss of profits to " the particular thing which is the ob-

ject of the contract," and does not embrace such loss of profits as may have been incidentally occasioned in respect to his other affairs. I cannot agree with the counsel for the plaintiff that the estimated profits upon the manufacture of a specified quantity of flax seed into linseed oil, constitutes a legitimate item of damages against the defendants. Such profits are entirely too speculative and uncertain to make them a measure of damages. "It is a very easy matter," says Chief Justice Nelson in *Masterton* v. *The Mayor of Brooklyn,* (7 *Hill,* 73,) "to figure out large profits upon paper ; but it will be found that these, in a great majority of cases, become seriously reduced when subjected to the contingencies and hazards incident to actual performance." There are few who have been so fortunate in their enterprises as not to have learned how great is the difference between speculative estimates of profits and the actual test of experience. Certainly such profits rest too much in speculation to make the loss of the chance of acquiring them the proper subject of consequential damages upon the breach of a contract, unless expressly stipulated for in the contract itself.

The view that I have taken of this question seems fully sustained by adjudged cases, both in this country and in England. The case of *Blanchard* v. *Ely,* (21 *Wend.* 342,) bears, in most of its features, a nearer resemblance to this case than any other I have found. There the plaintiff had contracted to build for the defendants a steamboat *intended to ply on the Susquehanna river* from Owego to Wilkesbarre, and to have the boat completed and put in operation by a certain day ; for which he was to receive a stipulated price. The plaintiff having delivered the boat, brought an action for the price, and by way of recoupment of damages the defendants proved that some of the machinery of the boat was defective, in consequence of which they had incurred expenses in making repairs and improvements : that the boat had also been subjected to delays and loss of profits which amounted to $100 each trip. The circuit judge allowed the jury to deduct the amount expended by the defendants in *remedying the defects* in the machinery, and in towing the boat to a proper place to have the repairs made, but

Freeman *v.* Clute.

directed them not to allow for delays or profits which might have been made upon the trips lost. The supreme court sustained the charge of the judge. Although the case under consideration may be, and I think is, distinguishable from that just cited, in respect to the question of delays, I cannot see how it can be distinguished with respect to the profits which might have been made but for loss of trips.

In *Driggs* v. *Dwight*, (17 *Wend.* 71,) it was held that a party who had entered into a contract with another for a loan of a tavern stand, and who had, in pursuance of such agreement broken up his former residence and removed to the place where he was to occupy the tavern stand, might in an action to recover damages for a breach of the contract in not giving him a lease of the tavern, recover the expenses he had thus incurred. And the court also say that " the measure of damages certainly is not confined to the difference of rent, *but that the jury might look to the actual value of the bargain the plaintiff had made.*" The principle of this case I think would justify an allowance to the plaintiff of any expenses he has actually incurred in his business *as a consequence* of the failure of the defendants to perform their contract. The case of *Miller* v. *The Mariners' Church,* (7 *Greenl.* 51,) is to the same effect. The plaintiff had contracted to deliver stone for the defendant's house by a certain time. He failed to deliver by the time specified, but having delivered the stone afterwards, in an action for the price of the stone the defendants were allowed to recoup in damages, the expenses they had *necessarily* incurred by the delay of their workmen for want of the stone.

The conclusion at which I have arrived after a careful examination of the facts in this case, and the authorities bearing upon the questions involved, and the principles governing the rule of damages in similar cases, is that the plaintiff is entitled to recover, in addition to the sum paid by him on account of the machinery, which now amounts with interest to about the sum of $700, the further sum of $700 for the expenses incurred and the damages sustained by him in consequence of the failure of the defendants to finish the machinery according

to their contract. The amount thus allowed embraces the loss of the use of the plaintiff's mill and other machinery, the fuel consumed, the delay of his workmen employed for the purpose of carrying on his business, and the interest on the amount expended in purchasing stock for the mill. I state thus particularly the grounds of my estimate of damages to enable the parties, if dissatisfied, the better to review the report.

Jefferson General Term, July, 1848. *Pratt, Gridley, and Allen,* Justices.