THE PRUDENCE CO., INC. *v.* FIDELITY & DEPOSIT COMPANY OF MARYLAND ET AL.

No. 270. Argued January 8, 9, 1936.—Decided February 3, 1936.

*Mr. Alfred T. Davison,* with whom *Messrs. Martin A. Schenck* and *Orrin G. Judd* were on the brief, for petitioner.

*Mr. John W. Davis,* with whom *Messrs. Thomas E. White* and *Joseph F. Murray* were on the brief, for respondents.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

We are to determine the measure of damages upon a bond conditioned against loss through the failure to complete a building at the time and in the manner called for by the building contract.

In September, 1929, petitioner, the Prudence Company, Inc., undertook to make a mortgage loan of $6,-650,000 in aid of the construction of Essex House, an apartment hotel in the City of New York. The borrower covenanted that the building would conform to plans and specifications, and would be completed not later than December 16, 1930. As part of the same transaction, two surety companies, the respondents in this court, signed a bond in the sum of $3,000,000, indemnifying the lender against loss through the failure of the borrower to construct and pay for a building conforming to the contract, and complete it by the stated time. The bond also provided that in the event of the borrower's default, the lender, if it so elected, should be at liberty to go forward with the work, and charge the cost against the sureties. Other conditions are believed to be immaterial to any question now before us.

On December 16, 1930, the borrower made default under the mortgage, abandoning the work with the building then unfinished. At that time the petitioner's advances under the building loan agreement were $6,575,-000, the full amount promised, less $75,000 retained by agreement. On December 18, 1930, petitioner through its nominee brought suit in the state court for the foreclosure of the mortgage. On January 6, 1931, it went into possession with the mortgagor's consent. On January 19, 1931, there was a judgment of foreclosure, followed by a sale on March 17, 1931, at which the mortgagee was the buyer, the bid of $6,000,000 being applied upon the mortgage. A deficiency judgment of $716,215.02 was entered the next month.

Petitioner in possession of the building went on with the unfinished work, bringing it to completion in October, 1931. An action on the bond was then begun against the sureties. The trial court gave judgment for damages in the sum of $798,416.81, made up of three classes of items:

the cost of completion; the loss from omissions and inferior substitutions; and the interest on investment, together with taxes and insurance charges, while the building was idle because unready for its occupants. 7 F. Supp. 392. The Circuit Court of Appeals for the Second Circuit found this award to be excessive. In the view of that court no award should have been made for interest, taxes or insurance during the period of idleness. Payments necessary to complete the building were properly allowed, for they were evidence of the difference in value between an incomplete and a completed structure. Reparation was also to be made for omissions and substitutions to the extent that they diminished value, unless strict compliance had been waived by the lender or its agents. However, the extent of the recovery was not susceptible of ascertainment without the aid of a new trial. This was so because evidence of waiver had been offered by the surety and erroneously excluded. A remand was thus necessary to elicit all the facts. 77 F. (2d) 834. Before a second trial was had, a writ of certiorari issued at the instance of petitioner to resolve a claim of conflict between the decision to be reviewed and a decision of this court. *Trainor Co.* v. *Aetna Casualty & Surety Co.,* 290 U. S. 47. The writ states that it is "limited to the question of the measure of damages," thus excluding from our consideration the ruling of the court below as to the effect of waiver of performance.

Limiting our review accordingly, we think the extent of the recovery upon the new trial that will be necessary has been too narrowly confined.

The petitioner should be placed in the same position it would have occupied if the building had been completed on December 16, 1930. *Trainor Co.* v. *Aetna Casualty & Surety Co., supra,* at pp. 54, 55; *Kidd* v. *McCormick,* 83 N. Y. 391, 398; *Province Securities Corp.* v. *Maryland Casualty Co.,* 269 Mass. 75, 94; 168 N. E. 252. To give

it nothing but the cost of doing the unfinished work, plus the loss resulting from omissions and substitutions, would be a scant measure of reparation, allowing nothing for delay. *Ruff* v. *Rinaldo,* 55 N. Y. 664; *C. W. Hunt Co.* v. *Boston Elevated Ry. Co.,* 199 Mass. 220, 233, 235; 85 N. E. 446; Sedgwick, Damages, 9th ed., § 645. If performance had been prompt, the mortgagee would have had the security of a finished structure, which a buyer at a foreclosure sale could have utilized at once. During the pendency of the suit, the rents might have been impounded at the hands of a receiver and applied upon the deficiency resulting from the sale. *Freedman's Saving & Trust Co.* v. *Shepherd,* 127 U. S. 494, 503; *Worthen Co.* v. *Kavanaugh,* 295 U. S. 56,. 62. With the building still unfinished there were no rents to be collected and hence none to be applied in reduction of the debt. More important still, the amount of any bid was certain to be reduced by notice to the bidders that the building would be unproductive until ready to be occupied. From the point of view of bidders the reduction in value as the consequence of delay would be made up of two factors: the estimated cost of finishing the work, and the estimated carrying charges, not to exceed the rental value, during the period of idleness. Cf. *Trainor Co.* v. *Aetna Casualty & Surety Co., supra,* at p. 55; *Kidd* v. *McCormick, supra,* at p. 398. So at least an assessor of the damages might find as a fair inference of fact, even if the finding does not follow as an inference of law. The effect of the decision is to hold down the recovery to the first of these factors and to eliminate the second.

The petitioner might have relied upon the testimony of experts as to the total depreciation and as to the weight of the component factors. It chose a different method. To show the loss sustained from finishing the work, it proved the actual cost, as by the express provisions of the bond it was at liberty to do. Cf. *Comey* v.

*United Surety Co.*, 217 N. Y. 268, 276; 111 N. E. 832; *Appleton* v. *Marx*, 191 N. Y. 81, 85, 86; 86 N. E. 563. One of the factors of diminished value it has thus established with precision. To fix the weight of the other factor, it would have done better to give evidence by experts of the rental value of such a building at the date of the default and later. *Griffin* v. *Colver*, 16 N. Y. 489, 496; *Cassidy* v. *Le Fevre*, 45 N. Y. 562, 567; *Witherbee* v. *Meyer*, 155 N. Y. 446, 453, 454; 50 N. E. 58. Instead of doing this it chose to give evidence of the taxes, insurance premiums and interest on investment. We are told by the respondents now that for anything appearing in the record the carrying charges may have been greater than any rents that could have been earned if the building had been finished. No such objection was made upon the trial. We think it comes too late when first made upon appeal. In the absence of more specific challenge the trier of the facts might not improperly assume that interest on the investment along with taxes and insurance were losses flowing from the failure to receive a finished building. *New York & Colorado Mining Syndicate* v. *Fraser*, 130 U. S. 611, 622, 623. The point will not be labored, for the assumption is a safe one that evidence and objection will not be subject to this criticism when the case is tried again.

A question is raised as to the form of the complaint. The respondents insist that its allegations are insufficient to permit proof of loss of rents in addition to the cost. We read the pleading otherwise. In the circumstances of this case, loss of rents is to be reckoned as general, not special, damage. Sedgwick, Damages, 9th ed., § 1261; *Griffin* v. *Colver*, *supra*; *Cassidy* v. *Le Fevre*, *supra*; *Ruff* v. *Rinaldo*, *supra*; *Jutte* v. *Hughes*, 67 N. Y. 267, 271. It is one of the factors contributing to and measuring the diminished worth of the security. Damages when general are recoverable under a pleading that does not

enumerate the items. *Armstrong* v. *Percy,* 5 Wend. 535, 538, 539; *Laraway* v. *Perkins,* 10 N. Y. 371, 373. Here the complaint alleges that except for the default and in particular the delay, the plaintiff would have obtained upon foreclosure the full amount of principal and interest due upon the mortgage; it alleges that through the same causes the value of the mortgage was impaired to the extent of the deficiency judgment; it alleges that the plaintiff has thereby been deprived of any and all return on the amount of the investment. We find these allegations broad enough to let in evidence of damages along the lines that have been marked.

Another trial will permit the petitioner to show more accurately than it has done upon the record now before us that the building was continuously untenantable until the completion of the work and that the time taken for completion did not outrun the bounds of reason.

What was ruled by the Court of Appeals in respect of the scope of the recovery for omissions and substitutions was not specified as error in the petition for the writ, and will be assumed to be correct. *Zellerbach Paper Co.* v. *Helvering,* 293 U. S. 172, 182; *Helvering* v. *Taylor,* 293 U. S. 507, 511; *Clark* v. *Williard,* 294 U. S. 211, 216.

The judgment is modified by a direction that the measure of damages upon a new trial shall be that defined in this opinion, and as thus modified affirmed.

*Modified and affirmed.*