In re PRUDENCE CO., Inc.

In re DAVISON.

Nos. 27496, 27028,

District Court, E. D. New York.

Nov. 6, 1937.

Alfred T. Davison, of New York City, pro se.

Thomas Cradock Hughes and Emanuel Celler, both of New York City, for Trustees of Prudence Co. Inc., debtor.

MOSCOWITZ, District Judge.

This matter comes before this court on exceptions filed by the petitioner, Alfred T. Davison, Esq., and by the debtor's trustees in reorganization, to a report of the special master appointed by an order of this court dated March 10, 1937, to hear and report on Mr. Davison's petition for an order confirming and approving his retention of $65,344.26 in satisfaction of his claim of an attorney's lien for that amount. The circumstances giving rise to this alleged lien are as follows:

The petitioner, Alfred T. Davison, Esq., was retained in the latter part of 1931 by the Prudence Company, Inc., to institute in its behalf a suit for the enforcement of a surety bond in the sum of $3,000,000 executed by Fidelity & Deposit Company of Maryland and American Bonding Company of Baltimore, which guaranteed the completion on or before September 16, 1930, of a certain forty-story apartment hotel now known as the Essex House. On October 22, 1932, a retainer agreement was executed between petitioner and the Prudence Company, Inc., pursuant to which petitioner was to receive 25 per cent. in cash of the amount actually received by the Prudence Company, Inc., or its assignee on account of the claims made on such surety bond, either by way of settlement or as a result of judgment.

The litigation was successfully conducted by the petitioner and resulted in the entry of judgment on June 14, 1934, in the sum of $781,694.56 (Prudence Co. v. Fidelity & Deposit Co. [D.C.] 7 F.Supp. 392). The defendants, however, appealed from this judgment, and on February 1, 1935, while briefs were being prepared for the appeal, the Prudence Company, Inc., filed a petition for reorganization in this court pursuant to the provisions of section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). Trustees in reorganization were appointed, and, upon being informed by the petitioner of his retainer by the Prudence Company, Inc., requested him to become their attorney under the terms of a proposed petition and order which would make his entire compensation subject to fixation by the court. The petitioner refused to accept this arrangement and insisted that his retainer by the Prudence Company, Inc., was sufficient authority to enable him to continue to prosecute the action, and further contended that it afforded the sole basis for the determination of his compensation. He took the position that his retainer gave him an attorney's lien which was not affected by the reorganization proceedings. In the face of this position, the trustees neither affirmed nor disaffirmed the contract of retainer and the petitioner continued to prosecute the action.

Subsequently, the original judgment was reversed by the Circuit Court of Appeals, Prudence Co. v. Fidelity & Deposit Co., 77 F.2d 834; this in turn was modified by the Supreme Court after granting of certiorari, 297 U.S. 198, 56 S.Ct. 387, 80 L.Ed. 581. After a second trial, judgment was entered for the Prudence Company, Inc., in the sum of $261,377.06 and collected on July 21, 1936. The judgment was paid by check drawn to the order of the trustees in reorganization and Alfred T. Davison, Esq., as attorney. This check was then deposited in a bank account in the joint name of the trustees and Mr. Davison.

The trustees argue that the petitioner should be denied compensation for his services in the conduct of the case, because of the provisions of Orders 42 and 44 of the General Orders in Bankruptcy (11 U.S.C.A. following section 53) and rule 5 of the Eastern District Bankruptcy Rules with which the petitioner did not comply. These rules provide as follows:

"Rule XLII. Compensation of Attorneys, Receivers, and Trustees.

"1. Every attorney, receiver, and trustee seeking an allowance of compensation from an estate for services rendered, or reimbursement for expenses incurred in the proceedings, shall file with the court a petition under oath, setting forth a full and detailed statement of such services and

expenses and the amount claimed therefor, and, in the case of an attorney or receiver, the amount of the partial allowance, if any, theretofore made. And such petition shall be accompanied by an affidavit of the applicant stating that no agreement has been made, directly or indirectly, and that no understanding exists, for a division of fees between the applicant and the receiver, the trustee, the bankrupt, the debtor, or the attorney of any of them. In the absence of such petition and affidavit no allowance of compensation shall be made; and no allowance shall be made to any attorney for a receiver or trustee except for professional services.

"2. Except in reorganization proceedings under section 77 and section 77B of the Act (11 U.S.C.A. §§ 205, 207), such petition shall be heard at a meeting of creditors, and the referee in sending the notice of such meeting prescribed by section 58 of the Act (11 U.S.C.A. § 94) shall state by whom and in what amount the allowance of the compensation or reimbursement for expenses is asked."

"Rule XLIV. Appointment of Attorneys for Receivers or Trustees.

"No attorney for a receiver or a trustee shall be appointed except upon the order of the court, which shall be granted only upon the verified petition of the receiver or trustee, stating the name of the counsel whom he wishes to employ, the reasons for his selection, the professional services he is to render, the necessity for employing counsel at all, and to the best of the petitioner's knowledge all of the attorney's connections with the bankrupt or debtor, the creditors or any other parties to the proceedings, and their respective attorneys. If satisfied that the attorney represents no interest adverse to the receiver, trustee, or any creditor in the matters upon which he is to be engaged, and that his employment would be to the best interests of the estate, the court may authorize his employment, and such employment shall be for specific purposes unless the court is satisfied that the case is one justifying a general retainer. If without disclosure any attorney acting for a receiver or trustee shall have represented any interest adverse to the receiver, trustee, or any creditor in any matter upon which he is employed for such receiver or trustee, the court may deny the allowance of any fee to such attorney, or the reimbursement of his expenses, or both, and

may also deny any allowance to the receiver or trustee if it shall appear that he failed to make diligent inquiry into the connections of said attorney.

"Nothing herein contained shall prevent the court, in proceedings under section 77 or section 77B of the Act (11 U.S.C.A. §§ 205, 207) from authorizing the employment of attorneys who are attorneys of the corporation, or associated with its legal department, in connection with the operation of the business of the corporation by a trustee or trustees under subsection (c) of section 77 and subsection (c) of section 77B (11 U.S.C.A. §§ 205, 207) when such employment is found by the court to be in the public interest in relation to such operation and is not adverse to the interests of the trustee or trustees or of the creditors of the corporation."

"Rule 5. Attorneys for Receivers and Trustees, and Accountants.

"No receiver or trustee in bankruptcy shall employ an attorney, accountant, or investigator, except upon the order of this Court, to be made by a Judge thereof, and not by a Referee; ordinarily the Court will not appoint an accountant at the instance of a receiver, and in exceptional cases only may this be done. Such order shall be granted only upon the petition of the receiver or trustee setting forth the name of the attorney, accountant or investigator whom he wishes to employ, the reasons for the selection of such attorney, accountant or investigator and the necessity of employing any attorney, accountant or investigator.

"Applications for the appointment of an accountant shall consist of the petition last above referred to, and an affidavit by the person nominated as accountant, setting forth:

"(a) His name in full, business address, and the date of his certification as an accountant, if he is a C. P. A., and his relationship to or business association with any attorney, creditor, the bankrupt, or other party to the proceeding.

"(b) Whether he has already rendered any services as an accountant to any such person, the extent thereof, and the status of his compensation therefor.

"(c) The nature and extent of the services that he proposes to render, the estimated cost thereof, the basis of such estimate, and the extent to which he is familiar with the books or accounts of the bankrupt or alleged bankrupt.

"The Court shall not be bound by the wishes of the petitioner as to the attorney, accountant or investigator to be employed, but where in its judgment it is for the best interest of the estate, the Court may deny the request, or authorize the employment of some one designated by it."

The petitioner admits noncompliance with the rules, but asserts that they are inapplicable because, he contends, he was never attorney for the trustees, but only counsel for the Prudence Company, Inc. To ascertain the validity of this position, it becomes necessary to examine the events following the filing of the petition for reorganization and their effect upon the petitioner's right to continue as attorney for the debtor in reorganization and extend the scope of his attorney's lien.

On February 1, 1935, this court approved the petitions for reorganization of the Prudence Company, Inc., and entered an order appointing trustees in reorganization. Pursuant to this order, the trustees were "vested with all title in and to all and singular the assets, properties, lands, estates, rights and franchises of whatsoever kind, character and description and wheresoever situated, of the debtor. * * *"

They were further, by paragraph 15 of the order, "authorized and empowered to institute or prosecute in any court * * * all such suits and proceedings as may be necessary in their judgment for the recovery or protection of the properties or rights of the debtor and to defend any actions, * * * now pending against the debtor or that may hereafter be asserted or brought * * * to which the Trustees or debtor are or shall be a party."

Paragraph 17 of the same order further provided: "That the debtor, its * * * attorneys * * * are, enjoined and restrained from interfering with, * * * enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets, goods, moneys, properties or premises belonging to or in the possession of the debtor or of the Trustees, or from taking possession of or in any way interfering with the same or any part thereof. * * *"

The whole intention and purport of the order was to vest in the trustees complete control over all the assets of the debtor and to enjoin all other persons from taking any steps or actions in respect to these assets. It specifically enjoined attorneys from enforcing liens upon the assets of the debtor or from interfering with them in any way. By order of this court dated March 8, 1935, the terms of this order were continued in full force and effect, so that the above provisions have been continually operative throughout the period concerned in this litigation.

There can be little doubt that the claim of the Prudence Company, Inc., against the Fidelity & Deposit Company of Maryland constituted one of the assets of the debtor company. When Mr. Davison therefore continued the prosecution of that action after the entering of the order without obtaining the authorization of the trustees, he was interfering with assets of the debtor within the meaning of the order. By continuing the prosecution of the action, there was the possibility that he would subject an additional part of the claim against the Fidelity & Deposit Company to his attorney's lien, since his compensation pursuant to the terms of his retainer by the Prudence Company, Inc., may have exceeded the allowance which he would have received in a quantum meruit computation based upon the period beginning with his commencement of the action and ending with the court's approval of the debtor's petition for reorganization on February 1, 1935. Under these circumstances, Mr. Davison's prosecution of the action without qualifying as attorney for the trustees violated the order of the court, and he cannot be allowed compensation for his activities after February 1, 1935.

The courts have repeatedly held that the rules governing the allowance of fees for attorneys for trustees are to be strictly construed. Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243; In re Rogers-Pyatt Shellac Co., 51 F.2d 988 (C.C.A.2); In re Eureka Upholstering Co., 48 F.2d 95 (C.C.A.2). While it is true that the trustees took the equivocal position of neither affirming nor disaffirming the retainer of Mr. Davison by the Prudence Company, Inc., their uncertainty cannot aid the petitioner in his claim for fees. After the order of February 1, 1935, he could no longer continue as attorney for the Prudence Company, Inc. He therefore had his choice of qualifying as attorney for the trustees and leaving his compensation to the judgment of the court, or of discontinuing his activities as attorney and receiving compensation on quantum meruit. He chose not to qualify, and thereby foreclosed the possibility of receiving remuner-

ation for his activities after February 1, 1935.

■ Sight must not be lost of the fact that the rules with respect to the compensation of attorneys are intended to protect the assets of the debtor. While in many instances the rules may result in an apparent injustice in depriving an attorney of compensation, or part of his compensation, for services which he has rendered in good faith, on the whole they are well designed to achieve their end, and hardship in a particular case does not entitle the court to disregard them.

The petitioner has cited in support of his contention that he could continue as attorney for the debtor after the approval of the petition for reorganization and receive compensation therefor. Johnson v. Collier, 222 U.S. 538, 32 S.Ct. 104, 56 L.Ed. 306; In re Olsen, 70 F.2d 253 (C.C.A.2); Kessler v. Herklotz (1st Dept.) 132 App. Div. 278, 117 N.Y.S. 45. These cases are not in point because of the absence of the injunctive provision of the order contained in the present case. Secondly, none of them make any reference to the right of an attorney for a bankrupt to fees and the procedure, if any, for obtaining them, where the bankrupt has continued litigation after the adjudication of bankruptcy. In re Olsen, supra, on which the petitioner particularly relies, stands for no more than the proposition that the continuance of an action by the attorney for a bankrupt does not constitute contempt of court where no provision of the court's order is pointed out enjoining such conduct. To accept the petitioner's contention that the attorney for a debtor can stand on his contract of retainer with the debtor even after the approval of a petition for reorganization would in effect give the debtor the right to set fees to be paid out of its assets even after it had been divested of control over its assets by the approval of the petition in reorganization, for the proposed rule, if accepted, would have to apply, not only in the case of a contingent fee arrangement, but also in cases where the exact amount of the fee had not been set in advance.

■ The petitioner also disregards the scope of the powers of the court in a 77B proceeding. The recent case of In the Matter of McCrory Stores Corporation (C.

C.A.2) 91 F.2d 947, brings this question into sharp focus. It recognizes the power of the reorganization court to control the amount of an attorney's lien arising from a contingent fee arrangement made prior to the approval of the 77B petition. An attorney there entered into a contingent fee arrangement with a group of creditors in a bankruptcy proceeding. Subsequently, a petition for reorganization pursuant to the provisions of section 77B was filed and the attorney continued to act on behalf of the creditors. The court held that it had the power to regard the contingent fee contract as terminated as of the time when the reorganization petition was approved, and to grant compensation on the basis of quantum meruit. While a factual distinction exists between the McCrory Case and the case at bar, nevertheless the principles enunciated therein govern equally well in this case and afford additional support for the conclusions reached herein.

■ The trustees have contended that the petitioner should be denied all compensation because no recovery resulted from the first trial and it was not until judgment was entered in the second trial that a fund was obtained. Mr. Davison's contract of retainer, however, is not to be so narrowly construed. He was entitled to compensation based upon any recovery obtained in the action and was not limited to that which might be received upon the first trial of an action. Thus the fact that the judgment in the first trial was set aside on appeal does not affect the right of the petitioner to claim compensation based upon the recovery in the second trial.

■ The petitioner is therefore entitled to compensation based upon quantum meruit for his services as attorney up to February 1, 1935. The special master found the reasonable value of these services to be $50,000. This finding will not be disturbed. In view of the fact that the reasonable amount for services had to be decided by the court, no interest will be allowed. Special master's fees which must be fixed on notice, as is required by the court rules, will be paid out of the debtor's estate.

The report of the special master will be confirmed.

Settle order on notice.