UNITED STATES of America, Plaintiff,

v.

UNIFIED INDUSTRIES, INC.
et al., Defendants.

Civ. A. No. 95–1585–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 10, 1996.

Helen F. Fahey, United States Attorney, Richard W. Sponseller, Assistant United States Attorney, Alexandria, Virginia, for plaintiff.

Douglas James Cole, Taylor, Newsome, Tinkham & Cole, P.C., Fairfax, Virginia, Christopher M. Collins, Christopher M. Collins, P.C., McLean, Virginia, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This case presents the question whether the Contract Dispute Act ("CDA"), 41 U.S.C. §§ 601–613, which establishes an exclusive regime for resolution of government contract disputes outside of federal district courts, precludes the government from maintaining an action in federal district court for breach of contract and unjust enrichment where those claims are closely related to claims properly brought in district court under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3731. Put another way, the question is whether the government is obliged to pursue breach of contract and unjust enrichment claims in one forum and claims for fraud in another, even though all claims relate to the performance of the same government contract.

### I

This action grows out of a set of eighteen government contracts, pursuant to which Unified Industries, Inc. ("Unified") was to provide the United States Navy with technical and scientific support on a variety of projects. In connection with its performance of the contract, Unified leased (i) computer equipment from Mall Leasing Partnership and (ii) calibration equipment from Fullerton Partnership Number One. The government alleges that because both partnerships are Unified subsidiaries, the Federal Acquisition Regulations ("FARs") limit what costs Unified can bill to the government in connection with the use of the leased equipment. Specifically, the FARs provide that the government may only be charged with the costs of ownership—including depreciation, taxes, insurance, and maintenance—for equipment leased from a subsidiary. Unified, it appears, did not identify either Mall Leasing or Fullerton as subsidiaries, and billed the government for the actual amount of the lease costs charged to Unified, an amount that substantially exceeded the costs of ownership of the equipment. In addition, the government alleges that a particular Unified employee spent only 62% of her time on activities associated with any of Unified's government contracts, yet Unified charged all of her salary for the relevant time period to the government contracts. In total, the government alleges it was overbilled approximately $330,000 for the equipment leases and the employee's salary.

To recover for this overbilling, the government filed this action against Unified and two of its officers,[1] alleging a violation of the

---

1. For purposes of clarity and brevity, the three defendants are collectively referred to as the "Unified defendants."

federal FCA, as well as state law causes of action for fraud, unjust enrichment, and breach of contract. The Unified defendants then moved to (i) dismiss all counts for failure to state a claim upon which relief could be granted, (ii) to dismiss the False Claims and fraud counts for failure to plead with the particularity required by Rule 9, Fed.R.Civ. P., and (iii) to dismiss the unjust enrichment and breach of contract counts for lack of subject matter jurisdiction. The Court denied the motions to dismiss for failure to state a claim and for failure to plead with particularity,[2] but took under advisement the question whether there was jurisdiction over the unjust enrichment and breach of contract claims. The parties were directed to file supplemental memoranda on the issue, which they did, and the matter is now ripe for disposition.

## II

It is a truism that federal courts are courts of limited jurisdiction; their power to adjudicate does not extend beyond the boundaries Congress has set by statute. So courts seeking to discern the boundaries of their power to adjudicate must begin by identifying and analyzing the jurisdictional statutes applicable in the circumstances at bar.[3] In this case, the proper starting point is the recognition that Congress, by the FCA, has given federal district courts original jurisdiction over actions for false or fraudulent claims against the government. But this only begins the analysis, for while the FCA makes this much clear, it says nothing about federal court jurisdiction over breach of contract or unjust enrichment claims that may be related to the FCA fraud claims. Instead, another statute, 28 U.S.C. § 1367(a), speaks to this issue. Section 1367(a) codifies federal supplemental jurisdiction over claims that form part of the same case or controversy as a claim over which there is jurisdiction. The government's unjust enrichment and breach of contract claims plainly fall within the scope of § 1367(a), for these claims form part of the same case or controversy as the government's FCA claims.[4] Yet, even here the analysis does not end for there is another statute that must be considered given the Unified defendants argument that the CDA's exclusive regime for resolving government contract disputes trumps the application here of § 1367(a). Evaluation of this argument requires an examination of the CDA's language and purpose.

The CDA establishes a comprehensive scheme of legal and administrative remedies for the resolution of government contract disputes. This scheme is designed to foster administrative resolution of government contract disputes and to this end it excludes these disputes from federal district court. An integral part of the comprehensive CDA scheme is the CDA's requirement that each agency designate a "contracting officer," a person who has the authority to enter into and administer contracts on behalf of that agency. See 41 U.S.C. § 601(3) (defining "contracting officer"). The CDA requires that breach of contract disputes be presented to the designated contracting officer rather than filed in federal district court. This provides the agency with an opportunity to review and resolve the dispute short of litigation. See 41 U.S.C. § 605(a). Once the contracting officer has issued a decision on the dispute, either party may appeal the decision to the agency's administrative Board

---

2. Specifically, the Court held that the complaint adequately describes the time, place and manner of the approximately 700 allegedly fraudulent transactions so as to comport with the requirements of Rule 9(b), Fed.R.Civ.P. *See Sweeney Co. v. Engineers–Constructors*, 109 F.R.D. 358 (E.D.Va.1986). The Court also rejected the argument that the complaint failed to state a claim because the phrase "cost of ownership" was ambiguous, holding that the term was adequately defined by the governing regulations.

3. *See Lockerty v. Phillips*, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943) ("[The power to establish the lower courts] includes the power of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.").

4. Section 1345 of Title 28 may also confer jurisdiction over the breach of contract and unjust enrichment claims. This statute provides that unless a federal statute provides otherwise, "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345.

of Contract Appeals or may forego the administrative route and seek review in the United States Court of Federal Claims. 41 U.S.C. §§ 606, 607(d), 609(a). The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals from either the Board of Contract Appeals or the Court of Claims. 41 U.S.C. § 607(g); 28 U.S.C. § 1295(a)(3).

■ The heart of the Unified defendants' argument is the exclusive nature of the CDA's dispute resolution process. They point specifically to the CDA's provision that "all claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer" and shall not be brought in federal district court. *See* 41 U.S.C. § 605(a). To this, the government responds that while § 605(a) generally precludes the government from filing an action related to a contract dispute in federal district court, the section also explicitly excepts from this preclusion all claims "involving fraud." Thus, the CDA provides that § 605(a) "shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud." *Id.* Arguably, some ambiguity infects this language. And, predictably, each side here seeks to exploit the ambiguity. Thus, the Unified defendants argue that the sentence refers to what actions the "agency head" may take and is silent as to whether the "contracting officer" may entertain such claims. Given that Congress chose to define "agency head" and "contracting officer" to be separate individuals, *see* 41 U.S.C. § 601(1) and (3), the Unified defendants argue the sentence should not be read to apply to contracting officers. For its part, the government correctly points out that the contracting officer is not an independent third-party arbiter, but an agent of the agency itself. Thus, the government argues that while § 605(a) grants agencies the authority to resolve contract disputes via an administrative rather than judicial process, that authority is withheld if the claim involves fraud.

Reference to § 605(a)'s legislative history requires that this ambiguity be resolved in favor of the government's position. Committee reports confirm that the final sentence of § 605(a) "was added to insure that cases involving fraud are not subject to the provisions of [§ 605(a) ].... Section 605(a) ... empowers contracting agencies to settle and pay, and administrative forums to decide, all claims or disputes arising under or growing out of or in connection with the administration or performance of contracts entered into by the United States excluding cases of fraud." S.Rep. No. 95–1118, at 19, *reprinted in,* 1978 U.S.C.C.A.N. 5235 at 5242, 5253; *see also Martin J. Simko Construction, Inc. v. United States,* 852 F.2d 540 (Fed.Cir.1988) (concluding, after an exhaustive review of the legislative history of the CDA, that "[a]t no time did Congress ever intend to include fraud claims in section 605(a)"). This conclusion is in agreement with the reported opinions addressing this point. *See United States ex rel. Mayman v. Martin Marietta Corp.,* 894 F.Supp. 218 (D.Md.1995) (holding that court had jurisdiction over common law counts related to FCA claim even though not presented to contracting officer); *United States v. Rockwell International Corp.,* 795 F.Supp. 1131 (N.D.Ga.1992) (same); *United States v. JT Construction Co.,* 668 F.Supp. 592 (W.D.Tex.1987) (same); *United States v. Meredith Corp.,* No. 89–668–B, 1990 WL 375611 (S.D.Iowa June 15, 1990) (same).

■ A second ambiguity lurks in § 605(a). It is, simply put, whether the phrase "involving fraud" reaches the breach of contract and unjust enrichment claims asserted here by virtue of their relation to the fraud claims. If so, then the CDA would be inapplicable here and the FCA coupled with § 1367(a) would confer federal district court jurisdiction over the breach of contract and unjust enrichment claims. On the other hand, if the phrase has a narrower scope, that is if the exclusion relates only to causes of action for fraud, and not more broadly to non-fraud claims factually related to fraud claims, then the CDA's specific terms would apply to trump § 1367(a)'s more general language.

The more plausible plain reading of the phrase "involving fraud" is that it contemplates a wider range of claims than those that actually allege a cause of action for fraud. Had Congress intended to limit the CDA's exception to causes of action for fraud, the statute presumably would have so provided explicitly, by referring specifically to claims "of fraud" or "for fraud." Instead,

Congress chose to use the more general phrase, "any claim involving fraud." The use of this broader language reflects a congressional intent to except from CDA exclusivity not only causes of action for fraud in particular, but also actions the factual bases of which are intertwined with allegations of fraud. And again, reference to § 605(a)'s legislative history supports this conclusion. *See* S.Rep. No. 95–118, at 20, reprinted in 1978 U.S.C.C.A.N. 5235 at 5245 (excluding from federal court jurisdiction "parts of the claim not *associated* with possible fraud or misrepresentation") (emphasis added).

While no Fourth Circuit opinion addresses this precise question, this reading of § 605(a) is in accordance with the great weight of authority concluding that "where [the specific] events, transactions, and contracts at issue in the lawsuit give rise to fraud allegations, the CDA no longer applies." *See, e.g., Mayman,* 894 F.Supp. at 224; *Rockwell International,* 795 F.Supp. at 1135; *JT Construction,* 668 F.Supp. at 594; *Meredith,* 1990 WL 375611 at *2. *But see United States v. Hughes Aircraft Co.,* No. 89–6842–WJR(SX), 1991 WL 133569 (C.D.Cal. April 5, 1991) (asserting without explanation or elaboration that the government's claims for mistake and unjust enrichment did not come within the fraud exception to the CDA). Thus, because the same set of operative facts alleged here gives rise to the contract and unjust enrichment claims, as well as to the FCA claims, the breach of contract and unjust enrichment claims constitute claims "in-

volving fraud," 41 U.S.C. § 605(a) and fall within the fraud exception of § 605(a). Section 1367(a) therefore applies and there is federal district court jurisdiction over the breach of contract and unjust enrichment claims.[5] So when a breach of contract or unjust enrichment claim is intimately bound up with and part of the same case or controversy as an FCA claim, the government need not pursue the claims in two separate fora, but may instead pursue all claims in federal district court.[6]

An appropriate order will issue.

---

5. The Unified defendants concede that there is jurisdiction over the common law fraud claim because that cause of action does not "relate to a contract" for purposes of § 605(a), and the exclusivity provision of the CDA therefore does not apply to that claim. Even if the fraud claim were deemed to "relate to a contract," the analysis applied here to the breach of contract and unjust enrichment claims would apply equally to the fraud claim. Consequently, there is jurisdiction over the common law fraud claim as well.

6. No significant risk exists that the government, as part of a plan to maintain a breach of government contract claim in federal district court, would attempt to avoid the exclusivity provision of the CDA by alleging fraudulent activity in relation to the contract dispute. First, Rule 11, Fed.R.Civ.P. requires the government to have a good faith basis for any allegations of fraud, and Rule 9, Fed.R.Civ.P. requires the allegations to

be specific, so there is little cause to fear that CDA exclusivity will be thwarted by unfounded fraud allegations by the government. Second, it is unlikely the government would even attempt such a ruse. The requirement that government contract disputes be submitted first to the agency's contracting officer is intended to benefit the government insofar as it allows the agency itself to review the dispute in a more expeditious and cost-effective forum. There is little reason to believe that the government would be eager to forego those benefits by resorting to unfounded fraud allegations to bring suit in federal district court. Finally, if in the course of the proceeding, the fraud allegations are dismissed as unfounded, it may then be necessary to dismiss the common law contract claims and require them to be submitted to the contracting officer pursuant to the CDA, for there would then be no claims "involving fraud" remaining in the case.